UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID ZAMBOROSKI,

        Plaintiff,               Case No. 1:13-cv-1199

v.                                      Honorable Paul L. Maloney

F. ROWE et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff David Zamboroski presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF), though the actions about which he complains occurred while he was housed at the Oaks Correctional Facility (ECF). He sues the following ECF employees: Assistant Resident Unit Supervisor (ARUS) F. Rowe; Sergeant (unknown) Shelly; Assistant Deputy Warden (ADW) Rick Sharp; and an unknown party named as Hearings Investigator Doe.

Plaintiff alleges that, on June 9, 2011, he was instructed to back up to his cell door, where he was handcuffed. He was informed that he was being taken to segregation. Plaintiff asked why he was being taken to segregation, but the guards told him they did not know. Later that day, Defendant Sergeant Shelly reviewed with Plaintiff a "Notice of Intent to Classify to Administrative Segregation." (Compl. ¶ 12, docket #1, Page ID#3.) Plaintiff told Shelly that he wanted a hearing and wanted to review all relevant documents. Shelly then laughed, telling Plaintiff, "You really believe you are getting a hearing on this[?] You never will; you should have played ball." (*Id.* ¶ 14.) Shelly then walked away.

On June 13, 2011, Defendant Hearings Investigator Doe came to Plaintiff's cell door. Doe asked Plaintiff what relevant documents Plaintiff had to present on his own behalf. Plaintiff told Doe that he wanted to see all documents that referred to the notice of intent. Doe informed Plaintiff, "There is no way that you will ever see anything but this 'Notice[.']" (*Id.* ¶ 18.) Plaintiff told Doe that he had a right to a formal hearing, and Doe responded, "We are riding you out, you will not get a hearing." (*Id.* ¶20.) When Plaintiff continued to insist on his right to a hearing, Doe

stated, "No hearing, and that's final. . . . [F]uck you Zamboroski, figure it out for yourself." (*Id.* ¶ 21.)

Later that day, Defendant ADW Sharp spoke with Plaintiff. Plaintiff complained that, as a legal writer, he was aware of his right to a hearing. Defendant Sharp responded, "You will get no hearing, we are riding you out." (*Id.* ¶ 23.) Plaintiff then threatening to sue all of the Defendants. Defendant Sharp replied, "Good luck with that." (*Id.* ¶ 24.)

Plaintiff complains that, because of the hostility of Defendants, he feared for his safety. Plaintiff alleges that he did not eat anything while he was in segregation, because he was afraid that staff would do something to his food. (*Id.* ¶ 25.) He continued to complain to every prison official who would listen, but he never learned the reason for his segregation. Plaintiff apparently was transferred to URF shortly thereafter, though he does not specify the exact date. Since arriving at URF, Plaintiff has never regained employment as a legal writer, a position he held at ECF.

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process when they removed him from his work assignment, placed him in segregation, and transferred him, without an administrative hearing. He also alleges that Defendants' actions violated his First Amendment right to redress of his grievances. In addition, Plaintiff contends that Defendants violated the Eighth Amendment by subjecting him to the punishments of firing him from his position, placing him in administration, and transferring him to URF, where he no longer can receive unspecified required programming.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff alleges that he was placed in segregation and transferred without a hearing, in violation of MDOC policy and due process. He also alleges that his job was terminated without a hearing, also in violation of due process. He contends that the transfer unconstitutionally prevents him from accessing rehabilitation programs. Finally, he complains that the secret allegations leading to his placement in segregation and his transfer continue to prevent him from being employed as a legal writer at URF, where he was transferred.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the

Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to suggest that his segregation at ECF imposed an atypical and significant hardship. Plaintiff's sole complaint is that he was placed in segregation for a few days. Such concerns fail to rise to the level of a due process violation.

Moreover, contrary to his assertions, Plaintiff did not have a federally cognizable liberty interest either in his job or in participating in unspecified rehabilitative programs. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th

Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in either prison employment or rehabilitative programs, he was not entitled to a hearing before he was terminated from his legal writer job or prevented from accessing his rehabilitation program.

Further, prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum*, 427 U.S. at 215. The Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228; *see also Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Because Plaintiff does not have a liberty interest in being held at a particular prison, he fails to state a due process claim.

In his final due process claim, Plaintiff alleges that, because MDOC policy required that he be given a hearing, he was denied due process when Defendants failed to give him a hearing. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). As a result, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

### B. First Amendment

Plaintiff alleges that he had a First Amendment right to redress his grievances, including the right to have a hearing to vindicate himself from the allegations leading to his placement in administrative segregation and his transfer.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Plaintiff's allegations do not suggest that Plaintiff was prevented from petitioning government or exercising any other right or freedom provided by the First Amendment. Plaintiff simply alleges that he did not get what he repeatedly petitioned government to receive: a hearing. "The First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.'" *See Smith v. Ark. State Highway Emps, Local 1315*, 441 U.S. 463, 464–65 (1979). Rather than the First Amendment, Plaintiff's allegations concerning his right to a hearing more properly are considered under the Due Process Clause. *See Brown v. Swarts*, No. 1:11-cv-991, 2012 WL 639457, at *2 (E.D. Cal. Feb. 27, 2012) (holding that a purported First Amendment claim that rested on the theory that the plaintiff was entitled to a hearing before transfer more properly calls into play due process rights).[1]

Plaintiff therefore fails to state a First Amendment claim.

---

[1] As previously discussed, Plaintiff fails to state a due process claim, because he had no liberty interest protected by the Due Process Clause.

### C. Eighth Amendment

Plaintiff alleges that he was punished in violation of the Eighth Amendment when he was fired from his work assignment, placed in administrative segregation, and transferred to another facility where he cannot get rehabilitative programming or employment as a legal writer.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although Plaintiff claims that he did not eat while housed in segregation because he feared that those who had placed him in segregation would poison his food, he makes no factual allegation that would suggest that his fear was reasonable. As a consequence, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, No. 09-6283, 2011 WL 2579779, at *5 (6th Cir. June 29, 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Similarly, "[t]ransfers from one prison to another do not per se violate the Eighth Amendment. *See Anderson v. Deleon*, No. C 12-6055 SI, 2013 WL 892276, a *5 (N.D. Cal. Mar. 8, 2013) (citing *Sisbarro v. Mass. State Penitentiary*, 592 F.2d 1, 4–5 (1st Cir. 1979). Plaintiff fails to show that any Defendant was deliberately indifferent to his health or safety when they decided to transfer him to another prison. *See Mingus*, 591 F.3d at 479-80.

Further, allegations that a prisoner has been deprived of access to a prison program or employment do not implicate the Eighth Amendment. *See Rhodes*, 452 U.S. at 348 (holding that limitations on access to jobs or educational opportunities are not conditions intolerable for prison confinement under the Eighth Amendment); *Fifer v. Mich. Dep't of Corr.*, No, 96-2322, 1997 WL 681518, at *2 (6th Cir. Oct. 30, 1997) (limitations on access to programs do not violate the Eighth Amendment). As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### D. 42 U.S.C. §§ 1985, 1986

Plaintiff alleges that Defendants conspired to violate his rights under the First, Eighth and Fourteenth Amendments, in violation of 42 U.S.C. § 1985. He also alleges that Defendants are responsible for negligently or recklessly failing to take corrective action, once they learned that their actions violated MDOC policy and the constitution, in violation of 42 U.S.C. § 1986.

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Scott*, 463 U.S. at 829; *Johnson*, 40 F.3d at 839; *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).

Plaintiff's § 1985 conspiracy claim fails for numerous reasons. First, Plaintiff has not alleged or established that he is a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics. *Seguin*, 968 F.2d at 590. Second, because the actions allegedly taken do not implicate a constitutional right, Plaintiff can demonstrate neither the injury nor the unlawful purpose required to state a § 1985 claim.

Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so . . . ." 42 U.S.C. § 1986. Because Plaintiff fails to demonstrate the existence of a conspiracy under § 1985, he fails to state a claim under § 1986. *See Thurmond v. County of Wayne*, 447 F. App'x 643, 650 (6th Cir. 2011); *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: __November 10, 2013__   /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            Chief United States District Judge